UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| GLOBAL CROSSING TELECOMMUNICATIONS, INC., and WILTEL COMMUNICATIONS, L.L.C., <br><br> Plaintiffs, <br><br> vs. <br><br> 3L COMMUNICATIONS MISSOURI, LLC, <br><br> Defendant. | Case No. 4:13CV00885 ERW |

## MEMORANDUM AND ORDER

This matter comes before the Court on a "Motion to Compel Arbitration" [ECF No. 10], filed by Defendant 3LCommunications Missouri, LLC ("3LCom"), and "Plaintiffs' Cross-Motion for Stay of Proceedings and Referral to Federal Communications Commission" [ECF No. 16], filed by Plaintiffs Global Crossing Telecommunications, Inc. ("Global Crossing"), and Wiltel Communications, LLC ("Wiltel") (Global Crossing and Wiltel will be collectively referred to as "Plaintiffs").

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiffs are interexchange carriers that transport interstate and intrastate telephone calls [ECF No. 1]. On May 9, 2013, Plaintiffs filed in this Court a Complaint against 3LCom, a competitive local exchange carrier that has filed federal switched tariffs for interstate "access services," and that completes calls transported by Plaintiffs [ECF Nos. 1, 9]. "Access services" include services and facilities provided for the origination and termination of any interstate communication [ECF No. 1 at 2].

In their Complaint, Plaintiffs allege, among other things, that 3LCom was engaged in "access stimulation" as defined by the Federal Communications Commission ("FCC"); the Communications Act of 1934, 47 U.S.C. § 151 et seq. (the "Act"); and the FCC's Connect America Fund Order, 27 FCC Rcd.. 4040 ("the Order"). They further allege that Plaintiffs declined to pay terminating access services invoices, submitted to them by 3LCom, totaling over $303,000. Plaintiffs also allege that 3L instituted an arbitration action before the American Arbitration Association ("AAA") [ECF No. 2], seeking to collect for the access charges that Plaintiffs failed and refused to pay. Plaintiffs contend that AAA lacks jurisdiction to resolve the dispute because Plaintiffs did not consent to arbitrate these issues before AAA, and that the dispute should be referred to the FCC.

Plaintiffs request declaratory judgment and injunctive relief. In their prayer for declaratory judgment, Plaintiffs have requested a declaration that they cannot be compelled to participate in arbitration because: 1) they have not consented to arbitrate an access stimulation dispute; 2) the FCC has primary jurisdiction over this dispute; and 3) compelling them to do so would violate public policy and Plaintiffs' rights under the Act and implementing regulations [ECF No. 1 at 6-7]. Plaintiffs additionally state they are entitled to a order from the Court staying and enjoining the arbitration proceeding, pending referral of this dispute to the FCC for resolution, or decision by this Court. Plaintiffs contend that, should the Court not refer this matter to the FCC, they are entitled to a declaratory judgment declaring that: 1) 3LCom is an access stimulator; 2) Plaintiffs are not obligated to pay 3LCom for the invoices in dispute; 3) Plaintiffs are obligated, at most, to pay 3LCom for terminating access charges at the rate prescribed in the access tariff of the price cap local exchange carrier with the lowest switched access rates in the state; and 4) Plaintiffs are not responsible or liable for the manner in which

their customers' traffic is delivered to 3LCom or for the network disruption alleged by 3LCom in its Arbitration Complaint [ECF No. 1 at 7].

3LCom filed its Motion to Compel Arbitration on June 3 [ECF No. 10]. On June 21, 2013, Plaintiffs filed their Cross-Motion for Stay of Proceedings and Referral to FCC [ECF No. 16].

## II. LEGAL STANDARD

### A. Motion to Compel Arbitration

"A federal court must stay court proceedings and compel arbitration once it determines that the dispute falls within the scope of a valid arbitration agreement." *Houlihan v. Offerman & Co., Inc.*, 31 F.3d 692, 695 (8th Cir. 1994). When addressing questions of arbitrability, courts must be mindful of the federal policy favoring arbitration, and engage in a limited inquiry to discern whether a valid agreement exists between the parties, and whether the dispute falls within its scope. *Id*. at 694-95.

### B. Motion to Stay

The doctrine of primary jurisdiction applies to "claims properly cognizable in court that contain some issue within the special competence of an administrative agency." *U.S. v. Rice*, 605 F.3d 473, 475 (8th Cir. 2010 (internal quotations and citation omitted)). This doctrine "requires the court to enable a 'referral' to the agency, staying further proceedings so as to give the parties reasonable opportunity to seek an administrative ruling." *Id.* The doctrine of primary jurisdiction aims to promote proper relationships between the courts and administrative agencies, as well as "uniformity, consistency, and the optimal use of the agency's expertise and experience." *Id.* The doctrine targets issues, and requires a determination whether the disputed issue is one that is "within the special competence of an administrative agency." *Id.* If a court

3

decides an issue is one suited to an agency's "expert and specialized knowledge," referral to the agency is appropriate under the primary jurisdiction doctrine. *Id.* at 476.

## III. DISCUSSION

In its Motion to Compel Arbitration, 3LCom contends that the issues raised in Plaintiffs' Complaint must be heard and resolved in the Arbitration matter 3LCom instituted before the AAA, because 3LCom's currently effective interstate tariff, on file with the FCC, includes a broad arbitration clause that is binding on Plaintiffs and requires them, upon written demand, to resolve by arbitration before the AAA, all disputes with 3LCom that are related to rates, terms, or conditions for tariff-provided services. 3LCom argues that the parties' disputed issue does not require the FCC's specialized expertise, and that arbitration would not violate the Act [ECF No. 11]. 3LCom moves the Court to dismiss this matter and to compel Plaintiffs to arbitrate the issues raised in their Complaint.

In their Memorandum of Law in Opposition to Defendant's Motion to Compel Arbitration, Plaintiffs contend that 3LCom "filed a motion seeking to compel secret arbitration because it does not want its compliance (or lack thereof) with the access stimulation (or "traffic pumping") rules of the [FCC] to be reviewed in any public forum, such as the FCC or even this Court" [ECF No. 18 at 1]. Plaintiffs claim they "cannot be forced into arbitration because they never consented, impliedly or otherwise, to arbitrate any disputes with [3LCom]" [ECF No. 18 at 2]. Plaintiffs further argue that they are not involved in 3LCom's existing arbitration proceeding; they claim the arbitration petition was filed by 3LCom "against the ultimate parent of Plaintiffs (Level 3 Communications, Inc.)" and "purported to include within its definition of Level 3 Communications, Inc., 'its affiliated subsidiary corporations, partnerships and limited liability companies,' including the Plaintiffs in this case" [ECF No. 18 at 9]. They contend that Global

and Wiltel thus are not parties to 3LCom's arbitration proceeding and "cannot be forced to shift their claims out of this Court and into that pending proceeding" [ECF No. 18 at 9]. Plaintiffs, however, "concede that the invoices at issue in the arbitration are the same ones at issue here"[1] [ECF No. 18 at 9].

According to 3LCom, the arbitration clause that requires Plaintiffs to submit their claim to be resolved by arbitration to the AAA is contained in Subsection I of Section 2.10.4 of 3LCom's Tariff F.C.C. No. 1, 1st Revised Sheet 2-18 ("Tariff F.C.C. No. 1") [ECF No. 2 at 54]. This subsection, entitled "Disputed Charges," provides, in pertinent part:

> All disputes between the Company and the Customer related to rates, terms and/or conditions (including collection of past due amounts) for services provided pursuant to this tariff, that cannot be settled through negotiation, shall be resolved by arbitration upon written demand of either party. Arbitration shall be referred to the American Arbitration Association (AAA) and conducted pursuant to its Commercial Arbitration Rules before a single arbitrator.

According to its terms, Tariff F.C.C. No. 1 "governs the regulations, rates, and charges applying to the provision of interstate Access Services supplied to Buyers for the origination and termination of traffic to and from Central Office codes assigned to 3L Communications Missouri, LLC" [ECF No. 2 at 30]. This tariff defines "Buyer" as "an Interexchange Carrier utilizing the Company's Access Service to complete a Call" [ECF No. 2 at 31].

The service relationship between 3LCom and Plaintiffs arises under the Communications Act and the tariff required by the Act; thus, this Court has subject matter jurisdiction over Plaintiffs' lawsuit under 28 U.S.C. § 1337(a). *MCI Telecomm. Corp. v. Garden State Inv. Corp.*,

---

[1]The Court notes that, in Level 3 Communications, LLC's "Answer and Special and Affirmative Defenses" filed before the AAA, it admits it is a holding company that is the ultimate parent of Plaintiffs, and "states that the following responses in this Answer are made by Wiltel and Global Crossing as if they had been properly named and served as Respondents, which they have not been" [ECF No. 19-2].

5

981 F.2d 385, 387 (8th Cir. 1992). "Although a user's refusal to pay charges fixed by a tariff will often arise in the context of a broken contract, the carrier's claim for payment is necessarily based on the filed tariff." *Id.* Claims brought under such FCC tariffs are not simply contract actions seeking to recover payment for services rendered, as "federal tariffs are the law, not mere contracts." *Id.* Because Section 203(a) of the Communications Act requires every common carrier such as 3LCom to file with the FCC tariffs showing all charges, classifications, practices, and applicable regulations, 3LCom customers are charged with notice of Tariff F.C.C. No. 1, and its provisions. *See Am. Tel. & Tel. Co. v. Cent. Office Tel., Inc.*, 524 U.S. 214, 221-22 (1998). Plaintiffs here are "buyers" as defined by the tariff, as both Global Crossing and Wiltel are interexchange carriers that utilize 3LCom's access service to complete calls. As customers of 3LCom, Plaintiffs are charged with notice of the tariff's arbitration clause, and they are bound by its terms. "The rights as defined by the tariff cannot be varied or enlarged by either contract or tort of the carrier." *Id.* at 227 (internal quotations and citation omitted). Consequently, Plaintiffs' contention that they "cannot be forced into arbitration because they never consented, impliedly or otherwise, to arbitrate any disputes with 3LCom," is unavailing. The Court finds that a valid arbitration agreement exists between the parties; accordingly, the inquiry remaining is to discern whether the parties' dispute falls within the scope of the arbitration clause. *See Houlihan*, 31 F.3d at 695; *see also MCI Telecomm. Corp. v. Happy the Glass Man, Inc.*, 974 F.Supp. 1016, 1021 (E.D. KY Jan. 23, 1997)(defendant entered into agreements with MCI that specifically incorporated provisions of MCI's tariff; tariff exclusively controlled the parties' rights and liabilities, defendant was presumed to know terms of the tariff, and was bound by its arbitration provision); *Pay Phone Concepts, Inc. v. MCI Telecomm. Corp.*, 904 F.Supp. 1202,

1207 (D. KS Sept. 6, 1995)(tariff requiring arbitration was binding upon Pay Phone regardless of whether it agreed to arbitration or not).

The Court notes that Paragraph 23 of Plaintiffs' Complaint acknowledges that 3LCom "has instituted an arbitration before the [AAA] . . . seeking to collect for the access charges which Plaintiffs have failed and refused to pay" [ECF No. 1 at 4]. 3LCom's arbitration proceeding, initiated to collect past due amounts for disputed charges, clearly falls within the scope of Tariff F.C.C. No. 1's arbitration provision. Plaintiffs' subsequently-filed Complaint frames the issue before this Court as being whether 3LCom has engaged in access stimulation, such that its invoices to Plaintiffs are unlawful and improper [ECF No. 1 at 5]. Nevertheless, boiled down to its essence, the parties' dispute relates to "rates, terms and/or conditions (including collection of past due amounts) for services provided pursuant to [3LCom's tariff]." "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]" *Moses H. Cone Mem'l Hosp., v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). The Court finds that the parties' dispute falls within the scope of a valid arbitration agreement. *See Houlihan*, 31 F.3d at 695. Thus, the Court must stay court proceedings and compel arbitration of this matter. *Id*. The Court will grant 3LCom's Motion to Compel Arbitration.

The federal policy favoring arbitration limits this Court's inquiry to determining the existence of a valid agreement between the parties, and whether the dispute falls within its scope. *Id.* Having determined that the tariff's arbitration provision constitutes a valid agreement between 3LCom and Plaintiffs, and that the parties' dispute is not outside the scope of the tariff's arbitration clause, the Court must deny Plaintiffs' request to stay this action and the related arbitration proceeding, as well as their request to refer the matter to the FCC [ECF No. 16].

7

## IV. CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant 3L Communications Missouri, LLC's Motion to Compel Arbitration [ECF No. 10] is hereby **GRANTED**. The parties shall proceed to arbitration, and this matter is **STAYED** pending resolution of the arbitration proceedings initiated before the AAA**.**

**IT IS FURTHER ORDERED** that Plaintiff's Cross-Motion for Stay of Proceedings and Referral to Federal Communications Commission [ECF No. 16] is hereby **DENIED**.

Dated this   26th   day of July, 2013.

E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE